IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LARON FORT,<br><br>Defendant.<br>_____ / | No. CR 03-0321 WHA<br><br>**ORDER DENYING<br>MOTION TO DISMISS<br>FORM 12 CHARGE** |

## INTRODUCTION

While on supervised release, defendant was ordered not to associate with gangs but allegedly violated this condition. He has moved to dismiss the Form 12 charge. For reasons stated below, defendant's motion is **DENIED**.

## STATEMENT

On March 10, 2004, defendant pled guilty to violating 18 U.S.C. 922(g)(1), being a felon in possession of a firearm. Defendant was sentenced to 27 months of custody, followed by three years of supervised release. On August 7, 2005, defendant waived his right to a hearing and to assistance of counsel in agreeing to a new supervisory condition. That condition stated that "[t]he defendant shall not associate with any member of the Osceola Mob gang" and that "[t]he defendant shall have no connection whatsoever with the Osceola Mob or any other gang." Prior to defendant's release, probation officer Lori Koehnen instructed defendant on August 15, 2005, not to contact his twin brother, Emile Fort. Ms. Koehnen considered

Emile Fort to be a gang member as well as an incarcerated felon awaiting a special circumstances double-murder trial. Ms. Koehnen explained to defendant her concerns that "offenders in custody can sometimes make requests of those that are not in custody." Defendant was reminded again of the terms of his supervised release on September 6, 2005 (the day of his release), September 18, 2005, and September 26, 2005 (Opp., Exh. 1).

Between September 6, 2005, and November 7, 2005, defendant had thirty phone conversations with Emile Fort, which were recorded by jail authorities. Some of these calls involved a discussion of a witness who Emile Fort believed was planning to testify against him (Chaplin Decl. ¶¶ 5, 7). For example, one call monitor log recorded the following exchange between defendant and Emile Fort on September 12, 2005:

| | |
|---|---|
| Emile Fort: | Man, see what's up blood, I mean really, on the one, I don't want no trouble. I don't want nothing done to dude, feel me, you know what I'm saying. |
| Defendant: | No, no that's not the question right there. |
| Emile Fort: | Ya feel me, I want the man to come to court and have his day, see what I'm saying, so I can catch this man in a lie. But, I want to know why he did some shit like that, feel me. You haven't heard from Roach and them? See what's up with Roach nigga. |
| Defendant: | I'm trying to reach at my resources right now. |
| Emile Fort: | You ain't talked to Big Carl? |
| Defendant: | No |
| Emile Fort: | That's who you need to talk to blood and see what's up, him too, feel me, and you know what I'm saying. |
| Defendant: | He keeping that thing one hundred? |
| Emile Fort: | Yeah, and you need to make sure too of that, see what I'm saying |

(Br., Exh. C).

The government states that "Big Carl" is a reference to an individual who may be a witness against Emile Fort (Chaplin Decl. ¶ 7). The Form 12 avers that at one point Emile Fort had a conversation with another unidentified subject and explained that he was willing to waive time so that defendant could be released. Emile Fort then said, "[h]e [defendant] ain't going to be fucking around." The government states the comment by Emile Fort posed a threat of

2

1  witness intimidation by defendant. On January 6, 2006, a petition was granted for the issuance
2  of a no-bail warrant for defendant's arrest.
3        Defendant now moves to dismiss the Form 12 on the bases that the probation officer
4  lacked authority to prevent him from contacting his brother Emile Fort, that the condition
5  violated his constitutional right to freedom of association, and that he was not given proper
6  notice. Defendant admits that he did the acts underlying the charge. His challenge is to the
7  lawfulness of the condition.

**ANALYSIS**

9        A probation officer shall "use all suitable methods, not inconsistent with the conditions
10 specified by the court, to aid a probationer or a person on supervised release who is under his
11 supervision, and to bring about improvements in his conduct and condition." 18 U.S.C.
12 3603(3). "In addition to the bare words of the probation condition, the probationer may be
13 guided by the further definition, explanations, or instructions of the . . . probation officer."
14 *United States v. Romero*, 676 F.2d 406, 407 (9th Cir. 1982).
15       Here, the conditions of defendant's supervised release required him to "not associate
16 with any member of the Osceola Mob gang" and to "have no connection whatsoever with the
17 Osceola Mob or any other gang" (Br., Exh. B). The probation officer's instruction that
18 defendant refrain from contacting his brother was comprehended within these conditions.
19 The probation officer considered defendant's brother to be a gang member who was awaiting a
20 special circumstances double-murder trial. Probable cause exists to believe that defendant's
21 brother is a member of a criminal gang. Defendant's brother is currently in federal custody,
22 having been indicted for numerous gang-related crimes. These allegations include murder,
23 attempted murder and distribution of narcotics. Whether he will be proven guilty remains to be
24 seen, but the indictment itself serves as probable cause for the charges.
25       Moreover, the probation officer explained to defendant the reason for her instruction —
26 that because of defendant's "strong bond as [a twin] . . . that offenders in custody can
27 sometimes make requests of those that are not in custody" (Opp., Exh. 1). The taped phone
28 conversations of defendant's brother bear out the probation officer's concern. The recorded

3

conversations reveal that defendant's brother was reviewing the evidence and witnesses against him with defendant. The Probation Department reported that defendant's brother spoke to another, unidentified person and told that person that he was willing to delay his trial to give additional time for defendant to be released. As stated, he then continued to say that "[h]e [defendant] ain't going to be fucking around" (Br., Exh. A). Although it is unclear when this conversation occurred, it is not unreasonable to believe that defendant's brother is delaying his trial in the hopes that defendant will be released and able to threaten the witnesses against Emile Fort.

Defendant argues that the probation officer's instruction constituted a new condition. The decisions cited by defendant in support are distinguishable. Those decisions addressed the delegation of judicial power to a probation officer regarding conditions of supervised release. For example, in *United States v. Stephens*, 424 F.3d 876 (9th Cir. 2005), the court-imposed condition required the defendant to undergo "at least two periodic drug tests thereafter, *as directed by the probation officer*" (emphasis added). The Ninth Circuit found that this delegation of discretion to the probation officer was in direct conflict with 18 U.S.C. 3583(d) which provides that "[t]he *court shall . . . order*, as an explicit condition of supervised release, that the defendant . . . submit to . . . at least 2 periodic drug tests thereafter (*as determined by the court*) . . ." (emphasis added). Thus a particular statute specifically called out that the judge was the one to make a certain specification. Likewise, *United States v. Pruden*, 398 F.3d 241 (3d Cir. 2005), also involved delegation of judicial authority to a probation officer. There, the district court granted the probation officer with the discretion to decide "whether [the defendant] would have to undergo mental health counseling." The Third Circuit held that this was an "impermissible delegation of judicial power: while probation officers may have discretion to decide the details of a defendant's mental health treatment, they may not be given the authority to decide whether or not such treatment will be required." *See also United States v. Johnson*, 48 F.3d 806 (4th Cir. 1995) (holding that the "delegat[ion] to a probation officer the authority to determine, within a range, the amount of restitution . . . would contravene Article III of the United States Constitution and is therefore impermissible").

In contrast, here, the condition that "defendant shall not associate with any member of the Osceola Mob gang" and that "defendant shall have no connection whatsoever with the Osceola Mob or any other gang" delegated no judicial authority to the probation officer. The probation officer's instruction was not a modification or enlargement of the court-imposed conditions. Any violation of the probation officer's instruction would have necessarily resulted in violating the court-imposed conditions. To be sure, the probation officer gave defendant the instruction on August 15, 2005, which was after defendant agreed to the condition not to associate with the Osceola Mob or any other gang on August 7, 2005. Yet, defendant indicated that he understood the probation officer's instruction, the reason for the instruction, and that it was given in connection with a reminder that he was not to associate with any gangs (Opp., Exh. 1). Nonetheless, defendant violated these conditions on the first day of his release on September 6, 2005, and continued to violate them.

Defendant casts the instruction as a new condition affecting his fundamental right to freedom of association (Br. 6), citing *United States v. Jacques*, 321 F.3d 255 (2d Cir. 2003). There, the defendant pled guilty to fraud. The defendant, who shared a home with her common-law husband, had continued to receive and cash social security checks on behalf of their son even though their son had been removed by state officials in response to allegations of neglect. The defendant was placed on probation. One of the standard conditions of probation was that the defendant could not associate with convicted felons. The defendant's husband had previously been convicted of a felony. On remand for issues unrelated here, the Second Circuit in dicta suggested that the lower court exclude defendant's husband from the category of people with whom the defendant could not associate to avoid constitutional difficulties.

Defendant's argument is unpersuasive for two reasons. *First*, as explained earlier, the instructions here were not new conditions that required judicial review. *Second*, the scenario in *Jacques* was vastly different. There, the family unit was a husband and wife living together. Here, the family unit involves two brothers, both adults, living apart.

It is well-settled that, "probationers do not enjoy the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of

special . . . restrictions." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (citations omitted). "The sentencing judge has broad discretion in setting [the conditions for supervised release], including restricting fundamental rights." A restriction is valid if it is "(1) primarily designed to meet the ends of rehabilitation and protection of the public and (2) reasonably related to such ends." *United States v. Bolinger*, 940 F.2d 478, 480 (9th Cir. 1991); *see also United States v. Smith*, No. 04-2248, 2006 WL 295542, at *4 (1st Cir. Feb. 8, 2006) (finding no abuse of discretion where defendant convicted of narcotics offense was ordered to stay away from his minor daughter as a condition of supervised release).

In order to prevent defendant's recidivism, his criminal associations must be curtailed. In fact, the criminal complaint for defendant's violation of Section 922(g)(1) states that defendant was with his brother when that violation occurred. At the time, both defendant and his brother were on probation with warrantless search conditions. Defendant and his brother ran into an apartment building in an attempt to escape the police officers who were chasing after them. The police officers found the brothers hiding in an apartment. Defendant was armed. It was only after a brief struggle that the police officers were able to disarm defendant (Crim. Compl., Cleary Aff. ¶¶ 8–14).

Defendant's fall-back position — that he did not receive notice — is unconvincing. Defendant argues that the probation officer should have filed a request to modify the conditions of supervision with the court, *i.e.*, a Form 49, in order to obtain judicial approval of the instruction. He claims the probation officer's failure to do so resulted in a lack of notice. Defendant cites *United States v. Wise*, 391 F.3d 1027 (9th Cir. 2004), for the proposition that notice is required so that "counsel and the defendant will have the opportunity to address personally its appropriateness" (Br. at 7 (quoting *Wise*, 391 F.3d at 1033)). Defendant argues that under Rule 32.1 he had a right to a court hearing prior to any modification of supervised release. *First*, as explained above, the instruction that defendant refrain from contacting his brother was not a modification of the court-imposed conditions. The proposition in *Wise*, therefore, is inapplicable because it assumes that the probation officer's instruction was a new condition. *Second*, defendant received actual notice of his probation officer's instruction prior

6

to his release, on the day of his release and two weeks after his release. *Cf. United States v. Ortega-Brito*, 311 F.3d 1136, 1138 (9th Cir. 2002) (holding that "where a releasee received actual notice of the conditions of his supervised release, a failure to provide written notice of those conditions will not automatically invalidate the revocation of his release based upon a violation of such conditions").

## CONCLUSION

Defendant's motion to dismiss is **DENIED**. A further hearing will be held on **MARCH 28, 2006, AT 2:00 P.M.**, to determine the appropriate sentence, defendant having admitted the facts underlying the charge.

**IT IS SO ORDERED.**

Dated: February 24, 2006.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7